IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RUSSELL H. DOI, | ) | CIVIL NO. 10-00639 LEK-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH AOKI, BRYAN PAGAN, | ) | |
| HARRY S. KUBOJIRI, COUNTY OF | ) | |
| HAWAII, JOHN DOES 1-25, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS JO AOKI, RYAN PAGAN, HARRY S. KUBOJIRI, AND COUNTY OF HAWAII'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS**

Before the Court is Defendants Jo Aoki's[1] ("Officer Aoki"), Ryan Pagan's[2] ("Officer Pagan"), Harry S. Kubojiri's ("Chief Kubojiri"), and the County of Hawaii's ("the County") (collectively, "Defendants") Motion for Summary Judgment on All Claims ("Motion"), filed on April 5, 2012. [Dkt. no. 74.] Plaintiff Russell H. Doi ("Plaintiff") filed his memorandum in opposition on June 15, 2012, and Defendants filed their reply on June 22, 2012. [Dkt. nos. 88, 90.] This matter came on for hearing on July 6, 2012. Appearing on behalf of Defendants was Laureen L. Martin, Esq., and appearing on behalf of Plaintiff were Ronald N.W. Kim, Esq., and Eric A. Seitz, Esq. After

_____

[1] Officer Aoki was incorrectly named in the Complaint as "Joe Aoki."

[2] Officer Pagan was incorrectly named in the Complaint as "Bryan Pagan."

careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendants' Motion is HEREBY GRANTED for the reasons set forth below.

## **BACKGROUND**

This case arose out of Officer Aoki's and Officer Pagan's response to an unfortunate and emotionally overwrought family dispute between Plaintiff and his siblings, Aimee Doi ("Aimee") and Edmund Doi ("Edmund").

Plaintiff's parents, Rikio Doi ("Rikio") and Florence Doi ("Florence"), resided at 78 East Kahaopea Street in Hilo, Hawai'i at the time of the subject incidents. [Mem. in Supp. of Motion at 2 (citing Defs.' Concise Statement of Facts in Supp. of their Motion for Summ. Jdgmt. on All Claims ("Defs.' CSOF"), Decl. of Laureen L. Martin ("Martin Decl."), Exh. N (excerpts of 9/7/11 Depo. of Edmund Doi ("Depo. of Edmund Doi")) at 8-9).] Edmund lived in the main house with them, and Plaintiff and his girlfriend, Stephanie Salazar, lived in a separate ohana unit on the property. [Depo. of Edmund Doi at 9.] Aimee lives in Las Vegas. [Defs.' CSOF, Martin Decl., Exh. B at 2.]

In 2009, Florence was diagnosed with cancer. In September 2009, she executed a number of documents to put her financial affairs in order, including a power of attorney, a will, and a revocable trust. [Defs.' CSOF, Martin Decl., Exhs. C, E.] Rikio also executed a power of attorney ("first power of

2

attorney"), a will, and the revocable trust. [Id., Exhs. B, D, E.] Both Florence and Rikio gave Aimee their respective powers of attorney and made Aimee the successor trustee to their trust. [Id., Exh. B; Exh. E at 6; Exh. H (excerpts of 9/7/11 Depo. of Aimee Doi ("Depo. of Aimee Doi")) at 15-16.]

Defendants contend that Plaintiff was upset that Aimee was chosen to handle their parents' financial affairs. [Mem. in Supp. of Motion at 2 (citing Defs.' CSOF, Martin Decl., Exh. I (excerpts of 9/27/11 Depo. of Russell Doi, Vol. I ("Depo. of Russell Doi, Vol. I")) at 178; Exh. O (excerpts of 9/8/11 Depo. of Delphine Kealoha ("Depo. of Delphine Kealoha")) at 17-18; Depo. of Edmund Doi at 23, 66-67; Depo. of Aimee Doi at 15-16, 32-33).] Defendants claim that Plaintiff harassed and yelled at Florence, [id. at 2-3 (citing Depo. of Aimee Doi at 17, 48-49; Depo. of Edmund Doi at 16-17; Depo. of Delphine Kealoha at 11-12, 15-17),] and harassed and threatened Aimee and Edmund [id. (citing Depo. of Aimee Doi at 15-16; Depo. of Russell Doi, Vol. I at 178; Depo. of Edmund Doi at 11)]. The police were often called during the family disputes. [Depo. of Aimee Doi at 37.]

Florence passed away on September 16, 2009. [Depo. of Aimee Doi at 18.] Defendants claim that Plaintiff continued to harass Edmund, Aimee, and Aimee's friend, Delphine Kealoha ("Delphine"). [Mem. in Supp. of Motion at 3 (citing Depo. of Aimee Doi at 19; Defs.' CSOF, Martin Decl., Exh. K (excerpts of

3

9/28/11 Depo. of Russell Doi, Vol. II ("Depo. of Russell Doi,

Vol. II")) at 303).] Defendants also allege that Plaintiff

attempted to gain control over Rikio's finances by taking his

wallet and redirecting Rikio's social security checks to a

different account. [Id. at 3-4 (citing Depo. of Aimee Doi at 44-

45; Depo. of Russell Doi, Vol. I at 180-81).] Defendants recount

an incident in which Plaintiff cut the brake lines to Aimee's car

and, when the tow truck driver arrived to tow the car, Plaintiff

sent him away. [Depo. of Aimee Doi at 17.] Aimee sought a

temporary restraining order against Plaintiff, but the state

district court denied it on or around September 29, 2009.

[Pltf.'s Concise Counter-Statement of Material Facts ("Pltf.'s

CSOF"), Decl. of E. Seitz ("Seitz Decl."), Exh. 22.] On or

around October 2, 2009, Rikio executed a power of attorney in

favor of Plaintiff ("second power of attorney"). [Id., Exh. 16.]

The subject incident occurred on October 8, 2009.

Edmund came home to find that Plaintiff had changed the locks on

the main house. [Depo. of Edmund Doi at 37.] Edmund called

Aimee and Delphine, who arrived with Rikio's first power of

attorney. [Id.; Depo. of Aimee Doi at 55.] Edmund called the

police, and Officer Aoki and Officer Pagan responded. [Defs.'

CSOF, Martin Decl., Exh. Q at ¶ 7; Exh. R at ¶ 6.]

Plaintiff and Rikio arrived thereafter. Plaintiff

retrieved Rikio's second power of attorney and showed it to

4

Officer Aoki in or around the carport.  [Depo. of Aimee Doi at 56, 58; Defs.' CSOF, Martin Decl., Exh. J; Exh. Q at ¶ 11.] Officer Pagan was standing at a distance, near Edmund, Aimee, and Delphine.  [Defs.' CSOF, Martin Decl., Exh. R at ¶ 9.]

According to Defendants' version of events:

Plaintiff immediately became upset and wasn't listening to the police.  Exhibits "H" at 59; "Q" at ¶ 11.  The police were trying to make him relax and mellow out but he wasn't willing to listen to reason and was yelling and swearing.  Exhibits "H" at 59; "Q" at ¶ 11; "R" at ¶ 10.  Officer Aoki instructed Plaintiff not to go towards the other family member, but he refused to follow instructions.  Exhibits "Q" at ¶ 11; "K" at 231, 273.  Instead, Plaintiff came towards Officer Aoki in an effort to confront the other family members.  Exhibits "J"; "K" at 226, 273; "L"; "M["] at 12; "Q" at ¶ 11.  Plaintiff stated under oath:

> **I wanted to leave the garage** to check on my father in the care [sic] because it was a hot day.  **Defendant Aoki prevented me from leaving the garage area**, shoved me against a car (emphasis added) . . .

Exhibit "M" at 12.

Officer Aoki pushed Plaintiff a single time in order to prevent him from approaching the other family members.  Exhibits "J"; "K" at 226, 273; "L"; "M["] at 12; "Q" at ¶ 11.  Plaintiff fell on a vehicle and cut his arm.  Exhibits "L"; "K" at 226.  Alarmingly, after Plaintiff fell on the vehicle, he again came towards Officer Aoki.  Exhibits "K" at 279; "Q" at ¶ 12.  Officer Aoki had a split second to respond and grabbed the Plaintiff as he approached.  Exhibit "Q" at ¶¶ 12-14.  Plaintiff claims Officer Aoki put him in a headlock which resulted in him twisting his neck.  Exhibit "K" at 280-81.  The entire

encounter happened very quickly and took less than ten seconds. Exhibits "K" at 233, 281 at ln 6-8.

Shortly after [Plaintiff fell] on the vehicle, Rikio opened the car door and began to exit the vehicle. Exhibits "H" at 60; "O" at 33. This caused great concern to the family because Rikio was in his eighties, frail and unsteady on his feet. Exhibits "H" at 46, ln 21-23; "O" at 34. The ground was also uneven with various debris and animal feces. Exhibit "H" at 65-66. Therefore, Delphine rushed to help Rikio walk in the direction of the main house. Exhibit "O" at 34-36. Plaintiff knew Delphine and Rikio were headed towards the house. Exhibit "K" at 293. Delphine also reassured Plaintiff she was just trying to help Rikio so that he wouldn't fall. Exhibit "O" at 34, ln 19-21. Plaintiff responded "Fuck this!" Exhibit "O" at 78.

Plaintiff did not want anyone to have contact with Rikio. Exhibit "K" at 265. Plaintiff began yelling "they no can take my father!" Exhibit "K" at 294. He was yelling "you guys cannot do this." The police repeatedly told Plaintiff to "just stay here". Exhibits "N" at 49-50; "R" at ¶ 11; "Q" at ¶ 14. The police also repeatedly told Plaintiff to calm down, but he continued to swear and refused to listen. Exhibits "R" at ¶ 11; "Q" at ¶ 14; "H" at 60-61; "O" at 34, 36-37. Plaintiff then tried to go towards the other family members. Exhibits "Q" at ¶ 14; "R" at ¶¶ 11-12; "K" at 296-97; "H" at 61; "O" at 34-35; "N" at 49-50. The police were yelling at Plaintiff to "stop!" Exhibit "O" at 35, ln 4. When Plaintiff tried to go towards the other family members, he used force against the police. Exhibits "Q" at ¶ 14; "R" at ¶¶ 11-12; "N" at 50-51; "O" at 34, ln 23; "H" at 61, 63. Plaintiff was yelling, swearing and was very aggressive to the police. He was vicious. Exhibits "H" at 117; "O" at 35, ln 11-20. The Officers were concerned for their own safety as well as

others.  Exhibits "R" at ¶ 11; "Q" at ¶ 11.

The police had to physically restrain
Plaintiff and everyone ended up on the
ground.  Exhibits "Q" at ¶ 14; "R" at ¶¶ 11-
12; "H" at 62-63.  Plaintiff is trained in
martial arts and is very strong.  It took
both Officers to hold him down.  Exhibits "N"
at 50, ln 8-12; "R" at ¶ 12; "H" at 63, ln
14-17.

Even while on the ground, Plaintiff
continued to resist and the police repeatedly
told him to calm down and "stop resisting".
Exhibits "Q" at ¶ 14; "R" at ¶11-¶12; "O" at
38; "K" at 300; "H" at 63, ln 14-25.  Instead
of following police instructions, Plaintiff
swore at the Officers.  Exhibit "H" at 64, ln
1-3.

[Mem. in Supp. of Motion at 4-7 (internal footnotes omitted).]

Conversely, according to Plaintiff's version of events,

Officer Aoki put him in a headlock when he merely leaned to the

side of Officer Aoki so that he could see his father:

Defendant Aoki followed Mr. Doi into the
garage area where Mr. Doi attempted to show
Defendant Aoki the power of attorney while
Defendant Aoki stood in front of him.  CCSOF
58.  Mr. Doi leaned to the side of Defendant
Aoki because he wanted to check on his
father.  CCSOF 14.  Without saying anything
or giving any other warning, Defendant Aoki
shoved Mr. Doi against a car in the garage,
which cut Mr. Doi's arm, then rapidly moved
to Mr. Doi's side and put Mr. Doi in a
headlock and twisted his neck.  CCSOF 12, 17.
Mr. Doi immediately knew that Defendant Aoki
had severely injured his neck.  CCSOF 59.

Mr. Doi went back into his house and
called his common-law wife.  CCSOF 60.  When
he emerged from his house Mr. Doi saw
Ms. Kealoha taking his father out of the car
and told Defendants Aoki and Pagan that his

7

> siblings and Ms. Kealoha should not be able
> to take his father.  CCSOF 61.  Defendant
> Aoki responded to Mr. Doi that Rikio Doi was
> "their father too."  CCSOF 62.  Mr. Doi was
> upset due to having been assaulted, the fact
> that his siblings had denied him contact with
> their mother before she died, and his concern
> that his siblings planned on taking their
> father away to Las Vegas.  CCSOF 63.  Mr. Doi
> yelled that the police should not let his
> siblings take his father.  CCSOF 64.

[Mem. in Opp. at 3-4.]

At that point, Officer Aoki and Officer Pagan arrested Plaintiff and charged him with disorderly conduct under Hawai'i Revised Statutes § 711-1101.  [Defs.' CSOF, Martin Decl., Exh. Q at ¶ 15.]  That charge was later dismissed with prejudice, due to Edmund's unavailability.  [Pltf.'s CSOF, Seitz Decl., Exh. 9.]

On the same day as the subject incident, Rikio executed a third power of attorney in favor of Aimee.  [Defs.' CSOF, Martin Decl., Exh. G.]  Shortly thereafter, Aimee took Rikio to live with her in Las Vegas; Edmund moved to Las Vegas, as well. [Depo. of Aimee Doi at 45-46; Depo. of Edmund Doi at 10.]

On or around October 13, 2009, Plaintiff filed a complaint with the Hawai'i County Police Commission ("Police Commission") against Officer Aoki and Officer Pagan.  [Defs.' CSOF, Martin Decl., Exh. J; Pltf.'s CSOF, Seitz Decl., Exh. 11 at 1-2.]  The Police Commission dismissed that complaint, finding that there was insufficient evidence that Officer Aoki and Officer Pagan committed any act of misconduct or any act

amounting to malicious use of force or excessive use of force.
[Id. at 3-5.]

On November 11, 2010, Plaintiff filed his Complaint for
Damages ("Complaint") in this district court.  He alleges four
causes of action: (1) constitutional violations of the Fourth,
Fifth, Ninth, and Fourteenth Amendments; (2) failure to train,
supervise, and/or discipline; (3) negligence; and (4) intentional
and malicious disregard of Plaintiff's rights.  [Dkt. no. 1.]

I.   **Motion**

    A.   **Plaintiff's Arrest**

Defendants first argue that Plaintiff's arrest by
Officer Aoki and Officer Pagan was proper.  They argue that
Officer Aoki and Officer Pagan only needed probable cause to
arrest Plaintiff, which requires that "'[t]he evidence need only
support the probability, and not a prima facie showing of
criminal activity.'"  [Mem. in Supp. of Motion at 9 (quoting
Illinois v. Gates, 462 U.S. 213, 235 (1983)).]

Defendants contend that the evidence supports
Plaintiff's arrest for disorderly conduct.  They argue that
Plaintiff was "creating a great deal of noise, including yelling
and swearing. . . .  In addition, Plaintiff was swearing,
physically aggressive and ignoring police admonitions to cease
his conduct. . . .  Therefore, there can be little doubt that the
Officers had probable cause to believe a violation of HRS § 711-

9

1101 had occurred." [Id. at 10.]

Defendants argue that Plaintiff could also have been charged with a number of other crimes. [Id. (quoting Tatum v. City & Cnty. of San Francisco, 441 F.3d 1090, 1094 (9th Cir. 2006) ("If the facts known to an arresting officer are sufficient to create probable cause, the arrest is lawful, regardless of the officer's subjective reasons for it.")).] Defendants claim that the officers had probable cause to arrest Plaintiff for other crimes, such as harassment under Hawai'i Revised Statutes § 711-1106, obstructing government operations under Hawai'i Revised Statutes § 710-1010, and resisting arrest under Hawai'i Revised Statutes § 710-1026. [Id. at 11-13.]

**B.    Qualified Immunity**

Defendants argue that, even if Officer Aoki and Officer Pagan did not actually have probable cause to arrest Plaintiff, they reasonably believed that probable cause existed and are therefore entitled to qualified immunity. [Id. at 13 (quoting Hunter v. Bryant, 502 U.S. 224 (1991)).]

**1.    Officer Aoki**

Defendants argue that Officer Aoki is entitled to qualified immunity. Regarding Plaintiff's claim that Officer Aoki violated his constitutional rights under the Fourth, Fifth, Ninth, and Fourteenth Amendments, Defendants contend that the excessive force claim must be analyzed under the Fourth

Amendment, which requires that officers' actions be "'objectively reasonable in light of the facts and circumstances confronting them . . . .'" [Id. at 16 (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).] Defendants argue that "the single most important factor in determining whether force is objectively reasonable is whether the suspect poses an immediate threat to the safety of the officers or others." [Id. at 17 (citing Miller v. Clark Cnty., 340 F.3d 959, 964 (9th Cir. 2003); Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994)).]

Defendants contend that Plaintiff posed a significant threat to the safety of Officer Aoki, Officer Pagan, and the other family members. When Plaintiff refused to follow Officer Aoki's instructions to calm down and not approach his family members, Officer Aoki pushed Plaintiff a single time. Plaintiff again came directly at Officer Aoki, who then placed Plaintiff in a headlock. [Id. at 18-19.] Defendants claim that "[t]he failure to follow commands raises a concern for the safety of the Officer because it demonstrates the individual's resistance to the Officer's attempts to control the situation." [Id. at 18.] Accordingly, Defendants take the position that the force employed by Officer Aoki was reasonable: "Officer Aoki had a split-second to decide how to deal with an aggressive individual who repeatedly failed to follow simple requests and was heading directly at him. The force chosen in this tense, uncertain and

11

rapidly evolving situation was a single push followed by grabbing
Plaintiff for a mere ten seconds." [Id. at 19.]

Defendants claim that Officer Aoki "utilized a low
level of force and simply attempted to gain control of an
aggressive and belligerent individual." [Id. at 19-20.]
Plaintiff was yelling, swearing, and attempting to approach his
family members against the instructions of Officer Aoki and
Officer Pagan. [Id. at 21.] The Ninth Circuit has found that
force under similar circumstances is reasonable. [Id. at 20
(some citations omitted) (citing Gregory v. Cnty. of Maui, 523
F.3d 1103, 1107 (9th Cir. 2008); Tatum v. City & Cnty. of San
Francisco, 441 F.3d 1090, 1096 (9th Cir. 2006); Miller v. Clark
Cnty., 340 F.3d 959, 968 (9th Cir. 2003)).] Defendants contend
that Officer Aoki would have been justified in using a higher
level of force, such as pepper spray or a baton. [Id.]

Defendants liken the present case to Abdulakhalik v.
City of San Diego, No. 08CV1515-MMA (NLS), 2009 WL 4282004 (S.D.
Cal. Nov. 25, 2009), in which the district court granted summary
judgment in favor of an officer who utilized a headlock in order
to restrain an individual who failed to follow an officer's
instructions, when the individual "tensed his arm" because he was
surprised when the officer grabbed him. [Id. at 21-22 (citing
2009 WL 4282004, at *6).] That court found that the use of the
headlock was objectively reasonable, because the officer could

12

have interpreted the actions as "'physical opposition to attempts of control, thus elevating him to an active aggressor.'" [<u>Id.</u> at 22 (quoting 2009 WL 4282004, at *6).] In the present case, Defendants contend that a reasonable officer on the scene would have perceived Plaintiff's actions as aggression and a physical threat, given that Plaintiff failed to follow Officer Aoki's warnings and attempted to "come back towards Officer Aoki," even after Officer Aoki had pushed him back. [<u>Id.</u>]

### 2. **Officer Pagan**

Defendants next argue that Officer Pagan is entitled to qualified immunity because he cannot be held liable for acts he did not commit. [<u>Id.</u> at 23 (citing <u>Motley v. Parks</u>, 432 F.3d 1072, 1081 (9th Cir. 2005); <u>Jones v. Williams</u>, 297 F.3d 930, 937 (9th Cir. 2002)).] Officer Pagan was not involved in the initial alleged use of excessive force by Officer Aoki, and Defendants point out that Plaintiff apologized to Officer Pagan for naming him in this lawsuit because he was not "the assaulter." [<u>Id.</u> at 23-24 (citing Depo. of Russell Doi, Vol. II at 219, 221).]

Defendants argue that Officer Pagan only used force against Plaintiff when Plaintiff attempted to go toward his family members in an allegedly threatening manner, and that the force used was justified under the circumstances because Plaintiff ignored warnings to calm down and not approach the family. [<u>Id.</u>]

13

### 3. **Chief Kubojiri**

Defendants argue that Plaintiff fails to articulate any basis of liability against Chief Kubojiri.  Defendants argue that, in response to Defendants' request for answers to interrogatories, Plaintiff did not identify any facts relating to Chief Kubojiri's allegedly wrongful acts.  [Id. at 25.]  At most, Plaintiff testified in his deposition that Chief Kubojiri is responsible because "he [is] in charge of the whole department."  [Id. at 25 n.15.]  Defendants contend, however, that Chief Kubojiri may not be held liable for his subordinates' conduct under a theory of respondeat superior.  [Id. (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)).]

Defendants argue that a supervisor may only be held liable under § 1983 if there exists: (1) his personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  [Id. at 26 (citing Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 937 (9th Cir. 2002); Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001)).]  Defendants contend that Chief Kubojiri is not liable because it is undisputed that he did not personally participate in the subject incident.  Defendants argue that, even if the City is liable for deficient training, Chief Kubojiri was not the police chief at the time Officer Aoki and Officer Pagan

14

attended recruit training.  Furthermore, Defendants argue that
Chief Kubojiri is entitled to qualified immunity, because he was
not put on notice that his actions violated a clearly established
constitutional right.  [Id. at 26-27.]

C.  **Municipal Liability**

1.  **Officer Aoki's and Officer Pagan's Actions**

Defendants argue that, because Officer Aoki and Officer
Pagan acted reasonably and did not commit any constitutional
violations, the County cannot be held liable.  [Id. at 27 (some
citations omitted) (citing Reed v. City & Cnty. of Honolulu, 76
Hawaiʻi 219, 227 (1994); Jackson v. City of Bremerton, 268 F.3d
646, 653-54 (9th Cir. 2001)).]

2.  **Failure to Establish Policy or Custom**

Next, Defendants argue that, even if Officer Aoki or
Officer Pagan committed constitutional violations, the § 1983
claim against the County fails, because Plaintiff cannot show a
municipal policy or custom as required by Monell v. Department of
Social Services of City of New York, 436 U.S. 658, 694 (1977).
They claim that the Complaint is devoid of any allegation
regarding a deficiency in formal policy or practice.  The County
does not condone excessive force, and any complaint of excessive
force is investigated by the Police Commission and/or Internal
Affairs and forwarded to the Administrative Review Board.
Defendants represent that, in every case in which the review

board found excessive force, Chief Kubojiri has imposed discipline. [Mem. in Supp. of Motion at 28-30.]

Defendants argue that, in the absence of a custom or policy, § 1983 liability may only be imposed if the challenged action was taken or ratified by an official with "'final policymaking authority.'" [Id. at 30 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).] In the present case, Plaintiff fails to allege that the county mayor or Chief Kubojiri ratified any unconstitutional action, or otherwise "'adopted an[d] expressly approved of the acts of others who caused the constitutional violation.'" [Id. at 31 (quoting Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996)).]

### 3. Training Deficiency

Defendants argue that the County's training was not deficient. They contend that liability is imposed against a municipality only where there is a "'deliberate indifference' to the rights of its inhabitants . . . ." [Id. at 32 (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989)).] As such, a plaintiff must prove: (1) an inadequate training program, (2) deliberate indifference, and (3) that the inadequate training "actually caused" a deprivation of a constitutional right. [Id. at 35 (citing Merritt v. Cnty. of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989)).]

Defendants argue that Plaintiff cannot prove inadequate

16

training, because the County provides extensive classroom and field training for new recruits and annual training thereafter that includes a review of the use of force. [Id. at 35-36.]

D. **State Law Claims**

Defendants contend that the use of reasonable force cannot provide the basis for state tort claims. [Id. at 36 (citing Johnson v. Cnty. of Los Angeles, 340 F.3d 787, 794 (9th Cir. 2003); Aprin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001)).] Defendants argue that, since the officers were acting reasonably, the state law claims fail. [Id. at 37.] They also contend that Plaintiff's claim for negligent supervision fails, because the officers were acting within the scope of their employment. [Id. at 37 n.21 (citing Dairy Road Partners v. Island Ins. Co., 92 Hawai'i 398, 423 (2000)).]

Defendants further argue that "Hawaii law provides that a government officer has a qualified or conditional privilege with respect to his or her tortuous [sic] actions taken in the performance of his or her public duty. This privilege shields all but the most guilty officials from liability." [Id. at 37-38 (some citations omitted) (citing Tucker v. Perez, Civ. No. 09-00376 SOM/KSC, 2010 WL 2985620, at *5 (D. Hawai'i July 28, 2010)).] Defendants argue that there is no evidence of malice or actions for an improper purpose. [Id. at 38.]

### E.   **Punitive Damages**

Finally, Defendants argue that punitive damages are not warranted in this case because municipalities cannot be liable for punitive damages.  There is no evidence that Officer Aoki or Officer Pagan acted with an "evil motive" or reckless disregard of Plaintiff's constitutional rights.  [<u>Id.</u> (citing <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1991); <u>Dang v. Cross</u>, 422 F.3d 800, 807 (9th Cir. 2005)).]

## II.   **Memorandum in Opposition**

### A.   **Material Facts Regarding the**
   **Use of Force and Plaintiff's Arrest**

Plaintiff argues that the facts concerning the force used by Officer Aoki and Officer Pagan, when viewed in the light most favorable to him, demonstrate excessive force and create an issue of fact.  Plaintiff claims that the officers' versions of events are inconsistent and omit key facts.  At the very least, Plaintiff argues that his inability to recall whether he was warned or not precludes summary judgment.  [Mem. in Opp. at 7 (citing <u>Santos v. Gates</u>, 287 F.3d 846, 851 (9th Cir. 2002)).]

Plaintiff argues that the force used against him was unreasonable, when viewed objectively and in light of the totality of the circumstances.  [<u>Id.</u> at 7-8.]  Plaintiff alleges that the force used against him was "clearly excessive and severe," because he suffers continuing injury.  [<u>Id.</u> at 9.]  He

argues that "there was no need to intervene at that time when [he] had not committed any crime, posed no threat to anyone's safety, and had not resisted arrest or attempted to escape. . . . [T]he police here clearly were culpable in wrongfully intervening in this family civil dispute . . . ." [Id.]

Plaintiff contends that Officer Aoki and Officer Pagan "improperly created the very situation pursuant to which Plaintiff was arrested." [Id.] Plaintiff argues that "[i]f an officer intentionally or recklessly violates a suspect's constitutional rights, then the violation may constitute a provocation that negates any claim that the subsequent force was reasonable or necessary." [Id. (citing Espinosa v. City & Cnty. of San Francisco, 598 F.3d 528, 538-39 (9th Cir. 2010)).] Plaintiff claims that Officer Aoki and Officer Pagan improperly chose to intervene in this civil dispute, "provided advice to Aimee and Edmund, effectively chose sides, wait[ed] at the residence for nearly half an hour, and . . . then provoke[d] Mr. Doi into the confrontation which resulted in his injuries and arrest." [Id. at 9-10.] Plaintiff argues that an individual has a privacy interest in his own garage, and Officer Aoki wrongfully entered his garage without consent and assaulted him without warning or justification. [Id. at 10 (citing State v. Cuntapay, 85 P.3d 634, 642 (Haw. 2004); State v. Cuntapay, 76 P.3d 625 (Haw. Ct. App. 2003) (Lim, dissenting)).]

Regarding Defendants' qualified immunity defense, Plaintiff argues that the officers' conduct violated a constitutional right, and "the right was clearly established in light of the specific context of the case such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." [Id. at 11 (citing Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003)).]

**B.    Liability of Chief Kubojiri and the County**

Regarding Chief Kubojiri and the County, Plaintiff argues that:

> Defendant Kubojiri may be liable for the failure to train and/or discipline Defendants Aoki and Pagan, and Defendant County of Hawaii may be liable for its ratification of Defendants Aoki and Pagan's wrongful actions. . . .  Defendants Kubojiri and County of Hawaii have not shown the sufficiency of their training for police officers to handle domestic disputes, and the deficiencies are apparent in the facts that Defendants Aoki and Pagan chose to intervene in a civil dispute and take sides.

[Id. at 12.]  Plaintiff further argues that the County and Chief Kubojiri did not seriously investigate Plaintiff's report of assault or his complaint to the Police Commission.  He states that "[t]here appears to be a pattern of Defendants Kubojiri and County of Hawaii failing to adequately investigate and impose discipline in cases involving police officers employing excessive force[,]" possibly supported by the fact that the Police Commission did not find any instance of excessive force during

20

2008.  [Id. at 13.]

C.    **State Law Claims**

Regarding the state law tort claims, Plaintiff argues
that he has shown that Officer Aoki and Officer Pagan acted
unreasonably and violated his constitutional rights.  [Id.]  He
also contends that a disputed issue of fact exists regarding
whether the officers acted outside the scope of their employment.
[Id. at 13-14.]  Furthermore, regarding Defendants' argument that
they did not act with malice, Plaintiff argues that such a
determination is not appropriate for summary judgment if a
reasonable trier of fact could find actual malice, as is the case
here.  [Id. at 14 (citing Rodriquez v. Nishiki, 653 P.2d 1145,
1151 (Haw. 1982)).]

D.    **Punitive Damages**

Plaintiff asserts that the evidence supports his claim
for punitive damages, as "there is substantial evidence of
Defendants' motive and intent to assist one side in a civil
dispute, of their violations of Mr. Doi's constitutional rights,
and/or of their reckless indifference to Mr. Doi's rights."
[Id.]

E.    **Request for Continuance**

Finally, Plaintiff argues that, if the Court is
inclined to grant to Motion, then it should allow a continuance

21

pursuant to Rule 56(f)[3] of the Federal Rules of Civil Procedure
so that he can take Defendants' depositions and conduct discovery
regarding the County's customs, policies, practices, or
procedures, including the circumstances and investigations of
other allegations of excessive force.  [Id. at 15; Pltf.'s CSOF,
Seitz Decl. at ¶¶ 21-22.]

III. **Reply**

    A.   **No Material Factual Dispute**

        Defendants first enumerate the material facts that
Plaintiff either admitted or failed to contradict.  [Reply at 2-
5.]  Defendants argue that Plaintiff admitted that he ignored
police commands prior to any force being used against him.
[Depo. of Russell Doi, Vol. II at 273-74.]  Defendants also argue
that Plaintiff's claim that he cannot remember whether he
received warnings does not create a dispute of material fact.
[Reply at 5 (some citations omitted) (citing Ikei v. City & Cnty.
of Honolulu, 441 Fed. Appx. 493, 494-95 (9th Cir. 2011)).]
Defendants contend that Plaintiff has admitted that he wanted to
leave the garage and came toward Officer Aoki in an effort to
confront the other family members, as documented in Plaintiff's
complaint to the Police Commission, his response to request for
interrogatories, and his statement in support of his assault

_____

    [3] It appears that Plaintiff requests a continuance under
Rule 56(d).  The 2010 amendments to Rule 56 moved then-subsection
(f) to subsection (d).

complaint.  [<u>Id.</u> at 6 (citing Defs.' CSOF, Martin Decl., Exh. J;
Exh. L; Exh. M at 2).]

Furthermore, Defendants claim that "new" facts offered
by Plaintiff in his memorandum in opposition either support
Defendants' position or are inaccurate.  [<u>Id.</u> at 7.]

**B.   <u>Probable Cause to Arrest Plaintiff</u>**

Next, Defendants reiterate that Officer Aoki and
Officer Pagan had probable cause to arrest Plaintiff.  They note
that Plaintiff did not contest this fact, and thus he conceded
that the arrest was proper.  Plaintiff could have been arrested
for a number of other crimes, such as disorderly conduct,
harassment, obstructing government operations, resisting arrest,
or hindering prosecution.  [<u>Id.</u> at 7-8.]

**C.   <u>Violation of Clearly Established Law</u>**

Defendants argue that Plaintiff fails to satisfy his
burden of proof in demonstrating that the right allegedly
violated was clearly established.  [<u>Id.</u> at 8 (citing <u>Romero v.
Kitsap Cnty.</u>, 931 F.2d 624, 627 (9th Cir. 1991)).]  They contend
that Plaintiff fails to cite any case that would suggest that
Officer Aoki or Officer Pagan acted inappropriately, other than
to just broadly suggest that individuals have a right to be free
from excessive force.  Rather, Defendants argue that the cases
cited in the Motion have held that the use of force under similar
circumstances is reasonable.  [<u>Id.</u> at 9 (citations omitted).]

23

**D.    Interference with a Civil Matter**

Next, Defendants argue that Plaintiff fails to provide any authority for his proposition that police cannot offer advice in civil disputes.  Even Plaintiff's expert admits that it was appropriate for Officer Aoki and Officer Pagan to respond to the 911 call and attempt to keep the peace.  [Id. (citing Reply, Decl. of Laureen L. Martin, Exh. U (excerpts of 6/1/12 Depo. of D.P. Van Blaricom) at 35-36).]

Plaintiff's expert opines that four statements by Officer Aoki and/or Officer Pagan were improper and escalated the dispute:

> 1) "We are here to give advice regarding this matter",
>
> 2) "Although he (plaintiff) has the power of attorney now, Edmund and Aimee are still his father's son and daughter",
>
> 3) "Edmund and Aimee are not trying to harm his father but are merely trying to get him out of the (plaintiff's) vehicle and escort him to his residence",
>
> 4) "His father is okay and he does not have to worry about his father"[.]

[Pltf.'s CSOF, Seitz Decl., Exh. 20 at 5.]

Defendants argue that these statements were not intended to and did not escalate the dispute, because Plaintiff was upset before these statements were made, and the statements "were clearly intended to calm Plaintiff and it's absurd to suggest they could incite aggression."  [Reply at 11-12.]

Defendants distinguish <u>Espinosa v. City & County of San Francisco</u>, 598 F.3d 528, 538-39 (9th Cir. 2010), because that case requires the provocation to be an independent Fourth Amendment violation, while, in the present case, the officers' statements do not constitute a violation of the Fourth Amendment. [<u>Id.</u> at 12-13.]

**E.    Liability of Officer Pagan**

Defendants argue that Plaintiff fails to articulate any basis for Officer Pagan's liability.  Because Officer Pagan cannot be held liable for an act that he did not commit, he is entitled to summary judgment.  [<u>Id.</u> at 13.]

**F.    Liability of Chief Kubojiri**

Defendants argue that Plaintiff fails to articulate any fact or evidence supporting his bald assertion that Chief Kubojiri "may" be liable for a failure to train and/or discipline, especially since he was not chief at the time Officer Aoki and Officer Pagan went through officer training.  [<u>Id.</u>] They also note that Plaintiff's expert does not have any criticism of Chief Kubojiri.  [<u>Id.</u> at 13 n.11.]

**G.    Liability of Officer Aoki**

Defendants argue that they are entitled to summary judgment as to Plaintiff's claims against Officer Aoki, on the ground that he is shielded by qualified immunity.  They contend that it is "illogical to conclude Officer Aoki is 'plainly

25

incompetent' or 'knowingly violated the law', such that he should be deprived of qualified immunity." [Id. at 15 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).]

### H. **Liability of the County**

Defendants argue that Plaintiff fails to put forth any evidence to establish municipal liability through: "(1) an expressly adopted official policy; (2) a longstanding practice or custom; or (3) action by a "final policymaker." [Id. at 15 (citing Molokai Veterans Caring for Veterans v. Cnty. of Maui, Civ. No. 10-00538 LEK-RLP, 2011 WL 1637330, at *25 (D. Hawai'i Apr. 28, 2011)).] Defendants argue that Plaintiff's position that the County ratified Officer Aoki's and Officer Pagan's actions though the Police Commission is "nonsensical," since the Police Commission is not the final policymaking authority. [Id. at 16.] Plaintiff has not offered any evidence showing insufficient or inadequate training. [Id. at 16-17.]

### I. **Following Plaintiff into the Carport/Garage**

Next, Defendants contend that Plaintiff's reliance on State v. Cuntapay, 104 Hawai'i 109, 85 P.3d 634 (2004), and State v. Cuntapay, 102 Hawai'i 382, 76 P.3d 625 (Ct. App. 2003), for the proposition that an individual has a privacy interest in his garage under state law, is misplaced. Defendants distinguish that case, where police entered a separate washroom within a garage during a warrantless search and seized evidence.

26

Conversely, Officer Aoki did not conduct a search and did not enter a separate room within the carport or garage area. [Id. at 17.] Defendants also note that entry on private property for investigative purposes does not violate the Fourth Amendment where the property is open. [Id. at 18 (citing State v. Rodriguez, 104 Hawai'i 191, 86 P.3d 1000 (2004); State v. Hook, 60 Haw. 197, 201, 587 P.2d 1224, 1227 (1978)).]

### J. **State Law Claims**

Regarding Plaintiff's state law claims, Defendants argue that Plaintiff's sole argument is that summary judgment is not appropriate on the issue of malice, but he fails to offer facts to raise a genuine dispute of material fact regarding malice. [Id. at 18-19.]

### K. **Punitive Damages**

Defendants argue that, even accepting Plaintiff's argument that Officer Aoki and Officer Pagan assisted one side in a civil dispute, Plaintiff fails to show that Defendants harbored an evil motive or intent or exhibited reckless or callous indifference to Plaintiff's constitutional rights. [Id. at 19 (citing Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005)).]

### L. **Rule 56(d) Continuance**

Finally, Defendants argue that Plaintiff's request for a Rule 56(d) continuance is insufficient. Plaintiff fails to identify the relevant information sought and the basis for his

belief that such information exists.  [Id. at 19 (citing Emp'rs

Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.,

353 F.3d 1125, 1129 (9th Cir. 2004)).]  They argue that the

deposition testimony of Officer Aoki and Officer Pagan would not

uncover evidence that would preclude summary judgment, as their

testimony will not be favorable to Plaintiff.  [Id. at 20.]  As

for Chief Kubojiri, Defendants argue that he has no personal

knowledge of the subject incident and therefore does not possess

information regarding "the constitutional deprivations Mr. Doi

suffered and . . . the malice of those defendants."  [Id.]

        Defendants contend that Plaintiff had adequate time to

conduct discovery, but did not do so.  Defendants filed the

present Motion on April 5, 2012, the discovery cutoff was July 6,

2012, and this matter is set for trial on September 5, 2012.

Defendants argue that "Plaintiff's failure to even attempt to

conduct discovery is strong evidence that Plaintiff made a

deliberate strategic decision to forgo this discovery and is an

admission that it is unnecessary to oppose this motion."  [Id.]

### STANDARD

        The standard for summary judgment is well known to the

parties and the Court and does not bear repeating here.  See,

e.g., Rodriquez v. Gen. Dynamics Armament & Technical Prods.,

Inc., 696 F. Supp. 2d 1163, 1176 (D. Hawai'i 2010).

## DISCUSSION

### I.  Request for Rule 56(d) Continuance

        The Court first considers Plaintiff's request for a
continuance under Rule 56(d) of the Federal Rules of Civil
Procedure.  Rule 56(d) provides that:

>        If a nonmovant shows by affidavit or
>        declaration that, for specified reasons, it
>        cannot present facts essential to justify its
>        opposition, the court may:
>
>>        (1) defer considering the motion or deny
>>        it;
>
>>        (2) allow time to obtain affidavits or
>>        declarations or to take discovery; or
>
>>        (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  Whether to deny a Rule 56(d) request for
further discovery by a party opposing summary judgment is within
the discretion of the district court.  Nidds v. Schindler
Elevator Corp., 113 F.3d 912, 920-21 (9th Cir. 1996).

        "A party requesting a continuance pursuant to Rule
[56(d)] must identify by affidavit the specific facts that
further discovery would reveal, and explain why those facts would
preclude summary judgment."  Tatum v. City & Cnty. of San
Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006).  Moreover, "[t]he
burden is on the party seeking additional discovery to proffer
sufficient facts to show that the evidence sought exists."
Nidds, 113 F.3d at 921.  "Rule [56(d)] is not a license for a
fishing expedition in the hopes that one might find facts to

support its claims." <u>Painsolvers, Inc. v. State Farm Mut. Auto.</u>
<u>Ins. Co.</u>, 732 F. Supp. 2d 1107, 1125 (D. Hawaiʻi 2010).

"Failure to comply with the requirements of Rule
[56(d)] is a proper ground for denying discovery and proceeding
to summary judgment." <u>Brae Transp., Inc. v. Coopers & Lybrand</u>,
790 F.2d 1439, 1443 (9th Cir. 1986); <u>see also</u> <u>Tatum</u>, 441 F.3d at
1100-01 (finding that an attorney declaration was insufficient to
support a Rule 56 continuance where the declaration failed to
specify specific facts to be discovered or explain how a
continuance would allow the party to produce evidence precluding
summary judgment). Finally, "[t]o prevail on a Rule [56(d)]
motion, the movant must also show diligence in previously
pursuing discovery." <u>Painsolvers</u>, 732 F. Supp. 2d at 1124; <u>see</u>
<u>also</u> <u>Nidds</u>, 113 F.3d at 921.

Plaintiff complied with Rule 56(d) insofar as his
counsel attested to the type of further discovery sought:

> 21.  My office intends on taking the
> depositions of Defendants Aoki and Pagan, and
> may also take Defendant Kubojiri's deposition
> to discover further evidence of the
> constitutional deprivations Mr. Doi suffered
> and of the malice of those defendants.
>
> 22.  My office will seek further discovery of
> Defendant County of Hawaii's customs,
> policies, practices, and or procedures
> pertaining to this matter, specifically the
> facts and circumstances of other complaints
> to the Hawaii County Police Commission
> alleging excessive force, and the cases in
> which Defendant Kubojiri is alleged to have
> imposed discipline upon a finding that a

police officer used excessive force.
[Pltf.'s CSOF, Seitz Decl. at ¶¶ 21-22.]

Plaintiff fails, however, to "proffer sufficient facts to show that the evidence sought exists." See <u>Nidds</u>, 113 F.3d at 921. He only provides generalized statements about additional discovery that needs to be done and not why it needs to be done or what specific facts he expects to uncover. Because Plaintiff does not identify the specific facts he seeks, he certainly does not identify how those facts would preclude summary judgment and thus merit a Rule 56(d) continuance.

Nor can the Court conclude there was diligence in previous efforts to pursue discovery. See <u>Painsolvers</u>, 732 F. Supp. 2d at 1124. The witnesses sought for the further discovery are all parties to this case and have presumably been known to Plaintiff from the inception of this litigation. As adverse parties in this case, their testimony is unlikely to be helpful to Plaintiff. The Court thus DENIES Plaintiff's request for a Rule 56(d) continuance and will proceed to decide the present Motion.

## II. <u>Constitutional Violations</u>

### A. <u>Probable Cause</u>

Defendants first argue that Officer Aoki and Officer Pagan had probable cause to arrest Plaintiff for disorderly conduct or a number of other crimes. The crime of disorderly

31

conduct is governed by Hawai'i Revised Statutes § 711-1101:

> (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:
>
> > (a) Engages in fighting or threatening, or in violent or tumultuous behavior; or
> >
> > (b) Makes unreasonable noise; or
> >
> > (c) Subjects another person to offensively coarse behavior or abusive language which is likely to provoke a violent response; or
> >
> > (d) Creates a hazardous or physically offensive condition by any act which is not performed under any authorized license or permit; . . .
>
> (2) Noise is unreasonable . . . if considering the nature and purpose of the person's conduct and the circumstances known to the person . . . the person's conduct involves a gross deviation from the standard of conduct that a law-abiding citizen would follow in the same situation; or the failure to heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced.

Viewing the facts in the light most favorable to Plaintiff, the Court agrees with Defendants that Plaintiff was "creating a great deal of noise, including yelling and swearing[,]" and was "physically aggressive and ignoring police admonitions to cease his conduct." [Mem. in Supp. of Motion at 10 (citations omitted).] For example, Plaintiff admits that he was yelling at the police and his family members, [Defs.' CSOF at

¶ 25 ("Plaintiff did not want anyone to have contact with his father. Plaintiff began yelling."); Pltf.'s CSOF at ¶ 64 ("Mr. Doi yelled that the police should not let his siblings take his father"),] and he admits to approaching his family members against police instructions [Depo. of Russell Doi, Vol. II at 296-97]. Moreover, Plaintiff admits that, when the officers were attempting to arrest him, he continued to struggle and swear. [Defs.' CSOF at ¶ 33 (citing Depo. of Aimee Doi at 64); Pltf.'s CSOF at ¶ 33.] Based on these undisputed facts, the Court concludes that Officer Aoki and Officer Pagan had probable cause to arrest Plaintiff for disorderly conduct.

B. **Qualified Immunity**

Defendants argue that, because Officer Aoki and Officer Pagan had a reasonable belief that Plaintiff was committing a crime, they are entitled to qualified immunity. Qualified immunity is applicable where "a reasonable police officer could have reasonably believed that his or her conduct was lawful in light of clearly established law and the information they possessed at the time." Sunn v. City & Cnty. of Honolulu, 852 F. Supp. 903, 907 (D. Hawai'i 1994) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987); Act Up!/Portland v. Bagley, 988 F.2d 868, 872-873 (9th Cir. 1993); Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993)).

Regarding qualified immunity, the Ninth Circuit has
adopted a three-part test:

The Ninth Circuit employs a three-part
test in determining whether state officials
are entitled to qualified immunity. See
Skoog v. County of Clackamas, 469 F.3d 1221,
1229 (9th Cir. 2006). The court must first
answer a threshold question: "Taken in the
light most favorable to the party asserting
the injury, do the facts alleged show the
[Defendant's] conduct violated a
constitutional right?" Saucier v. Katz, 533
U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed.
2d 272 (2001). If the answer is no,
qualified immunity applies to the conduct.
If the answer is yes, the court proceeds to
the second level of analysis.

The second prong of the qualified
immunity analysis determines whether the
right allegedly violated was "clearly
established" at the time the state official
acted. Id. at 201-02, 121 S. Ct. 2151.
This analysis "must be undertaken in light
of the specific context of the case, not as
a broad general proposition." Id. at 201,
121 S. Ct. 2151. A claim of a
constitutional violation in a generalized
sense is insufficient; instead, "the right
the official is alleged to have violated
must have been 'clearly established' in a
more particularized, and hence more
relevant, sense: The contours of the right
must be sufficiently clear that a reasonable
official would understand that what he is
doing violates that right." Anderson v.
Creighton, 483 U.S. 635, 640, 107 S. Ct.
3034, 97 L. Ed. 2d 523 (1987). Thus, "[t]he
relevant, dispositive inquiry in determining
whether a right is clearly established is
whether it would be clear to a reasonable
officer that his conduct was unlawful in the
situation he confronted." Saucier, 533 U.S.
at 202, 121 S. Ct. 2151. If the answer to
this question is no, qualified immunity
applies to the conduct. If the answer is

yes, the court turns to the third and final
prong.

> The final question the court must ask
> is "whether the [Defendant] could have
> believed, 'reasonably but mistakenly . . .
> that [his] conduct did not violate a clearly
> established constitutional right.'" Skooq,
> 469 F.3d at 1229 (quoting Jackson v. City of
> Bremerton, 268 F.3d 646, 651 (9th Cir.
> 2001)). "[S]ummary judgment is appropriate
> only if Defendants are entitled to qualified
> immunity on the facts as alleged by the
> non-moving party." Blankenhorn v. City of
> Orange, 485 F.3d 463, 477 (9th Cir. 2007)
> (citing Barlow v. Ground, 943 F.2d 1132,
> 1136 (9th Cir. 1991)).

Alexander v. City & Cnty. of Honolulu, 545 F. Supp. 2d 1122,

1135-36 (D. Hawai'i 2008) (internal footnote omitted) (some

alterations in Alexander).

### 1.   Officer Aoki and Officer Pagan

The Court first addresses the officers' assertion of

qualified immunity.  As to the first prong, the violation of a

constitutional right, Plaintiff asserts that Officer Aoki and

Officer Pagan used excessive force against him and, to a lesser

extent, that Officer Aoki entered his carport without his

consent.[4]

---

[4] Although the Complaint also makes mention of the Fifth,
Ninth, and Fourteenth Amendments, those protections are
inapplicable here.  The Fifth Amendment only pertains to
violations by the federal government, Lee v. City of Los Angeles,
250 F.3d 668, 687 (9th Cir. 2001), which were not alleged here,
the Ninth Amendment does not independently secure any
constitutional right for the purposes of pursuing a civil rights
claim, Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir.
(continued...)

### a. __Excessive Force__

In an excessive force Fourth Amendment case, the Court applies the reasonableness test articulated in __Graham v. Connor__, 490 U.S. 386, 396 (1989). The test is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. __Id.__ The reasonableness inquiry is objective, without regard to the officers' good or bad motivations or intentions. __Id.__ The Court judges reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and allowing "for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." __Id.__

Defendants argue that Officer Aoki and Officer Pagan did not use excessive force when confronting Plaintiff. The excessive force analysis requires a two-part inquiry:

> "[w]e first assess the quantum of force used
> to arrest [the plaintiff]" and then "measure
> the governmental interests at stake by
> evaluating a range of factors." __Deorle v.__
> __Rutherford__, 272 F.3d 1272, 1279-80 (9th Cir.
> 2001). Factors we consider in assessing the

---

[4](...continued)
1986), and a claim for excessive force is analyzed under the Fourth Amendment, rather than the Fourteenth Amendment, __Graham v.__
__Connor__, 490 U.S. 386, 395 (1989).

government interests at stake include
"[1] the severity of the crime at issue,
[2] whether the suspect poses an immediate
threat to the safety of the officers or
others, and [3] whether he is actively
resisting arrest or attempting to evade
arrest by flight." <u>Graham</u>, 490 U.S. at 396,
109 S. Ct. 1865. Courts may also consider
"the availability of alternative methods of
capturing or subduing a suspect." <u>Smith[ v.
City of Hemet</u>, 394 F.3d 689, 701 (9th Cir.
2005)].

<u>Davis v. City of Las Vegas</u>, 478 F.3d 1048, 1054 (9th Cir. 2007)

(some alterations in <u>Davis</u>).

There are three incidents in which Officer Aoki used

force: (1) the initial push against the car in the carport;

(2) the headlock; and (3) the restraint of Plaintiff on the

ground in the driveway. As for the initial push, Officer Aoki

pushed Plaintiff a single time, causing him to fall back against

a parked car. [Pltf.'s CSOF at ¶ 17.] Officer Aoki then placed

Plaintiff in a headlock. [<u>Id.</u>] Plaintiff agrees that at no time

did Officer Aoki or Officer Pagan punch, kick, or use any weapons

against Plaintiff. [Pltf.'s CSOF at ¶ 37.] The United States

Supreme Court has stated that "not every push or shove, even if

it may later seem unnecessary in the peace of a judge's chambers

violates the Fourth Amendment. Pushes and shoves, like other

police conduct, must be judged under the Fourth Amendment

standard of reasonableness." <u>Graham</u>, 490 U.S. at 395; <u>see Coles

v. Eagle</u>, 753 F. Supp. 2d 1092, 1098-1101 (D. Hawai'i 2010).

37

The Court weighs this push and headlock against the government interests at stake. When evaluating whether Plaintiff "pose[d] an immediate threat to the safety of the officers or others," the Court considers whether Officer Aoki reasonably believed that the use of force was "objectively reasonable in light of the facts and circumstances confronting" him. See Graham, 490 U.S. at 396-97. Both parties agree that "Officer Aoki had a split second to respond," [Defs.' CSOF at ¶ 20; Pltf.'s CSOF at ¶ 20,] and that "[t]he entire encounter happened very quickly and took less than ten seconds" [Defs.' CSOF at ¶ 21; Pltf.'s CSOF at ¶ 21]. Plaintiff admits that he was attempting to get past Officer Aoki and leave the carport, [Defs.' CSOF, Martin Decl., Exh. M at 12,] but thereafter provides conflicting accounts of the actual force used by Officer Aoki and the sequence of events. Officer Aoki reacted to what he believed were Plaintiff's aggressive acts, as evidenced by Plaintiff's yelling, swearing, and disregard of Officer Aoki's warnings not to approach the other family members. According to Officer Aoki's account, Plaintiff would not calm down, and was moving towards the other family members. He asserts that Plaintiff "yelled 'Fuck that!' and attempted to get by me towards the other family members. This caused me great concern and I believed he intended to physically harm the other family members. In order to prevent [Plaintiff] from injuring anyone, I grabbed

[Plaintiff] as he came towards me." [Defs.' CSOF, Martin Decl., Exh. Q at ¶ 11.]

The Court finds that Officer Aoki had a reasonable belief that Plaintiff posed an immediate threat to the officers, Aimee, Edmund, and Delphine. Officer Aoki would have been justified in using a higher level of force, such as pepper spray, but he instead utilized a low level of force to prevent Plaintiff from possibly injuring others. See Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994). Even accepting Plaintiff's version of events, it was reasonable for Officer Aoki to utilize a push and headlock when Plaintiff refused to follow Officer Aoki's instructions.[5] This minimal amount of force, when balanced with the governmental interest of preventing harm to the officers and family members, does not rise to the level of excessive force.

Regarding Officer Aoki's and Officer Pagan's use of force to restrain Plaintiff in the driveway, the Court engages in the same analysis. The parties provide less information about the use of force to restrain Plaintiff in the driveway and arrest

---

[5] Although Plaintiff argues in some places that Officer Aoki did not provide any warning, [Pltf.'s CSOF at ¶ 12,] he states in other places that he does not remember if he was warned, [Depo. of Russell Doi, Vol. II at 231,] and yet in other places that Officer Aoki told him not to approach the other family members [id. at 273-74]. Plaintiff's inability to recall the events of the subject incident or choose one version of events does not create a dispute of material fact to preclude summary judgment. See Ikei v. City & Cnty. of Honolulu, 441 Fed. Appx. 493, 494-95 (9th Cir. 2011).

him, but, again, Officer Aoki and Officer Pagan did not punch or kick Plaintiff or utilize any sort of weapon or pepper spray. The Court balances this level of force with the government interest at stake and considers "whether [Plaintiff was] actively resisting arrest or attempting to evade arrest by flight." See Graham, 490 U.S. at 396. During the scuffle with the officers, Plaintiff admits that he continued to resist arrest and that the officers told him to calm down and "stop resisting." [Defs.' CSOF at ¶ 33; Pltf.'s CSOF at ¶ 33.] Given that Plaintiff does not present any evidence that the force utilized here was excessive, the Court finds that Officer Aoki and Officer Pagan[6] acted reasonably to restrain Plaintiff on the driveway while they placed him under arrest.

The Court rejects Plaintiff's argument that Officer Aoki or Officer Pagan acted recklessly or provoked the confrontation by wrongfully interfering in a civil dispute. Officer Aoki and Officer Pagan only offered advice insofar as it was intended to calm Plaintiff in his agitated state. [Pltf.'s CSOF, Seitz Decl., Exh. 20 at 5.] Moreover, although Plaintiff makes much of the fact that the officers were at the residence for half an hour before Plaintiff arrived, he offers no evidence that the officers had any improper motive in doing so. There is

---

[6] Plaintiff admits that Officer Pagan did not assault him, but that it was Officer Aoki "who did the damage." [Depo. of Russell Doi, Vol. II at 219, 221.]

40

no evidence that the officers "chose sides" or otherwise improperly interfered in a civil dispute, nor does the Court conclude that the officers "gave" custody of Rikio to Aimee and Edmund.

Accordingly, the Court finds that, in all three instances, Officer Aoki and Officer Pagan used the minimal amount of force reasonably believed necessary to prevent harm to others and restrain Plaintiff. Since there is no constitutional violation regarding excessive force, the Court ceases its inquiry at this first step.

### b.    Entry into Carport

Plaintiff also argues in passing that Defendants violated his constitutional rights by entering the carport without his consent, because an individual has a privacy interest in his or her garage. [Mem. in Opp. at 10 (citing State v. Cuntapay, 85 P.3d 634, 642 (Haw. 2004); State v. Cuntapay, 76 P.3d 625 (Haw. Ct. App. 2003)).] The Cuntapay cases, however, involve a warrantless search of a separate washroom within a garage and the seizure of evidence. The facts of the present case are distinguishable, as the officers did not search the carport, seize evidence, or enter any separate room within the carport. This Court finds that, even if Officer Aoki or Officer Pagan entered the carport while examining the second power of attorney, they did not violate Plaintiff's constitutional rights.

41

Accordingly, the Court FINDS that Officer Aoki and Officer Pagan are entitled to qualified immunity.

### 3. **Chief Kubojiri**

As to Chief Kubojiri, he cannot be held liable under a theory of respondeat superior for Officer Aoki's or Officer Pagan's actions.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001). Rather, a supervisor can only be liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Jeffers, 267 F.3d at 915 (citations and internal quotation marks omitted).  It is undisputed that he did not personally participate in any of the alleged constitutional violations.  [Defs.' CSOF at ¶ 43; Pltf.'s CSOF at ¶ 43.]  To the extent Plaintiff alleges that Chief Kubojiri "may be liable for the failure to train and/or discipline Defendants Aoki and Pagan," Plaintiff offers no factual basis to support this assertion, other than to argue that "the deficiencies are apparent in the facts that Defendants Aoki and Pagan chose to intervene in a civil dispute and take sides."  [Mem. in Opp. at 12.]  Plaintiff fails to raise a genuine dispute of material fact as to Chief Kubojiri's training or discipline, as further discussed below.  Accordingly, the Court GRANTS summary judgment

as to Plaintiff's claims against Chief Kubojiri.

## III. **Municipal Liability**

Next, the Court considers Plaintiff's claims against the County for liability for Officer Aoki's and Officer Pagan's actions. It is well established that a municipality cannot be held liable pursuant to § 1983 under a theory of respondeat superior liability. <u>Monell v. Dep't of Social Servs. of City of New York</u>, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory"). The Supreme Court has held that municipalities may be held liable as "persons" under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." <u>Id.</u> at 694. Additionally, a plaintiff may establish municipal liability by:

> demonstrating that (1) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate."

<u>Price v. Sery</u>, 513 F.3d 962, 966 (9th Cir. 2008) (quoting <u>Ulrich</u>

v. City & Cnty. of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002)); see also Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (holding that a plaintiff may establish municipal liability by proving: that the alleged constitutional violation was committed pursuant to a formal policy or custom that constitutes the standard operating procedure; that an official with "final policy-making authority" committed the constitutional tort; or "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it"); Sunn v. City & Cnty. of Honolulu, 852 F. Supp. 903, 908-09 (D. Hawai'i 1994) (A municipality can only be held liable for unconstitutional acts where the acts were "(1) the direct result of inadequate police training or supervision; (2) the product of an officially adopted policy statement, ordinance, regulation, or decision; or (3) illustrative of a custom which is so permanent and well settled to constitute a custom or usage with the force of law.").

"[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). The word "custom" recognizes situations where the practices of officials are permanent and well settled. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970). A plaintiff may not assert a claim under § 1983 merely by identifying conduct properly attributable

to the municipality.  <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.</u>
<u>v. Brown</u>, 520 U.S. 397, 404 (1997).  "The plaintiff must also
demonstrate that, through its deliberate conduct, the
municipality was the 'moving force' behind the injury alleged.
That is, a plaintiff must show that the municipal action was
taken with the requisite degree of culpability and must
demonstrate a direct causal link between the municipal action and
the deprivation of federal rights."  <u>Id.</u>

    **A.**   **<u>Custom or Policy or Failure to Train</u>**

      First, Defendants argue that Plaintiff fails to
establish a municipal policy or custom.  Plaintiff argues that
the County[7] may be liable for deficient training of police
officers, as shown by Officer Aoki's and Officer Pagan's actions
toward Plaintiff.  [Mem. in Opp. at 12.]  The Court agrees that
Plaintiff has not identified any particular custom, policy,
practice, or procedure that would constitute deficient training.
Indeed, Plaintiff's request for a Rule 56(d) continuance asks
that the Court continue this Motion so that he could uncover
evidence of such.  [Pltf.'s CSOF, Seitz Decl. at ¶ 22.]

      Moreover, Plaintiff fails to provide any evidence
showing the County's deliberate indifference to the rights of
others.  Regarding a municipality's failure to train its police

---

[7] To the extent this discussion applies to Plaintiff's
claims against Chief Kubojiri, the Court incorporates it into its
decision to grant summary judgment in favor of Chief Kubojiri.

officers, this district court has stated:

> Where a claim is based upon a failure to
> properly train police officers, liability may
> be imposed "only where the failure to train
> amounts to deliberate indifference to the
> rights of persons with whom the police come
> into contact." <u>Price</u>, 513 F.3d at 973
> (citations omitted).  To prove deliberate
> indifference, a plaintiff must demonstrate
> that the county made a conscious or
> deliberate choice "to risk a 'likely'
> violation of constitutional rights." <u>Id.</u>
> "[This] standard is objective in that it does
> permit a fact finder to infer 'constructive'
> notice of the risk where it was 'obvious' –
> but this is another way of saying that there
> needs to be some evidence that tends to show
> a conscious choice." <u>Id.</u>  "'[D]eliberate
> indifference' is a stringent standard of
> fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of
> his action." <u>Bd. of County Comm'rs of Bryan
> County, Okl. v. Brown</u>, 520 U.S. 397, 410
> (1997).

> The Supreme Court has explained that

> > a deficient training "program," [is]
> > necessarily intended to apply over time
> > to multiple employees.  Existence of a
> > "program" makes proof of fault and
> > causation at least possible in an
> > inadequate training case.  If a program
> > does not prevent constitutional
> > violations, municipal decisionmakers may
> > eventually be put on notice that a new
> > program is called for.  Their continued
> > adherence to an approach that they know
> > or should know has failed to prevent
> > tortious conduct by employees may
> > establish the conscious disregard for
> > the consequences of their action – the
> > "deliberate indifference"–necessary to
> > trigger municipal liability.

> <u>Id.</u> at 407 (citation omitted); <u>see also</u> <u>Otani
> v. City & County of Hawaii</u>, 126 F. Supp. 2d

> 1299, 1304 (D. Haw. 1998) ("[T]he County can
> be held liable under Section 1983 for its
> failure to properly supervise or train its
> employees where such failure evidences a
> deliberate indifference to the constitutional
> rights of Plaintiff.")

Schmedes v. Moniz, Civ. No. 08-00331 DAE-LEK, 2009 WL 3398933, at

*3-4 (D. Hawaiʻi Oct. 22, 2009) (alteration in Schmedes).

> This district court has further stated:

>> Liability may only be imposed for
>> failure to train when that failure "reflects
>> a 'deliberate' or 'conscious' choice by a
>> municipality." [City of] Canton [v. Harris],
>> 489 U.S. [378,] 389, 109 S. Ct. 1197 [1989].
>> Further, failure to train claims "can only
>> yield liability against a municipality where
>> that city's failure to train reflects
>> deliberate indifference to the constitutional
>> rights of its inhabitants." Id. at 392, 109
>> S. Ct. 1197. Given these restrictions on
>> municipal liability, a plaintiff seeking to
>> impose liability against a county for failure
>> to train must show: "(1) [A]n inadequate
>> training program, (2) deliberate indifference
>> on the part of the County in adequately
>> training its law enforcement officers, and
>> (3) [that] the inadequate training 'actually
>> caused' a deprivation of [a plaintiff's]
>> constitutional rights." Merritt v. County of
>> L.A., 875 F.2d 765, 770 (9th Cir. 1989); see
>> also Gibson v. County of Washoe, 290 F.3d
>> 1175, 1194 (9th Cir. 2002) (setting forth a
>> similar three-prong test) (citation omitted).
>> Notably, the county policy amounting to
>> deliberate indifference "can be one of action
>> or inaction." Long v. County of L.A., 442
>> F.3d 1178, 1185 (9th Cir. 2006) (citing
>> Canton, 489 U.S. at 388, 109 S. Ct. 1197).

Wereb v. Maui Cnty., 727 F. Supp. 2d 898, 921 (D. Hawaiʻi 2010),

reconsideration granted in part on other grounds, 830 F. Supp. 2d

1026 (D. Hawaiʻi 2011) (alterations in Wereb) (footnote omitted).

Plaintiff provides no evidence in support of the County's "deliberate indifference."  At most, Plaintiff offers conjecture that, based on the Police Commission's failure to find misconduct due to excessive force in 2008, there may be a "pattern of Defendants Kubojiri and County of Hawaii failing to adequately investigate and impose discipline."  [Mem. in Opp. at 13.]  The Court is unpersuaded that a single year without any finding of excessive force evidences a deficiency or wrongdoing concerning the Police Commission's investigations.  Without anything more, Plaintiff fails to identify a genuine dispute of material fact regarding his allegation that the County has a deficient training program or that the County demonstrated deliberate indifference to the training deficiencies.

**B.    Ratification by Policymaker**

Plaintiff also takes the position that the County "may be liable for its ratification of Defendants Aoki and Pagan's wrongful actions," because the "Commission's dismissal of Mr. Doi's complaint constituted Defendants' [sic] Kubojiri and County of Hawaii's ratification of Defendants Aoki and Pagan's wrongful actions as a matter of custom, policy, and/or practice." [Id. at 12, 13.]  At the hearing on the present Motion, Plaintiff explained this theory: because Chief Kubojiri has imposed discipline in accordance with the recommendations of the Police Commission, the Police Commission is a de facto policymaker;

thus, the Police Commission's finding that there was insufficient evidence to support Plaintiff's complaint against Officer Aoki and Officer Pagan was a final policymaker's ratification of the officers' wrongful acts.

As Defendants noted in their Reply, Plaintiff's position lacks merit. Plaintiff agreed that Chief Kubojiri and the mayor of Hawai'i are the final policymakers concerning police policy and procedure, not the Police Commission. [Defs.' CSOF at ¶ 48; Pltf.'s CSOF at ¶ 48.] This Court cannot say, as a matter of law, that Chief Kubojiri's decisions to follow the Police Commission's recommendations regarding officer discipline somehow vests the Police Commission with Chief Kubojiri's final policymaking authority through some transitive theory. Nor does Plaintiff provide the Court with any authority for this novel position. The Court thus FINDS that there is no disputed issue of material fact regarding municipal liability, and the Court GRANTS summary judgment in favor of the County.

## IV. **State Law Claims**

Regarding Plaintiff's state law claims, Defendants argue that Officer Aoki's and Officer Pagan's use of reasonable force cannot be the basis for state law tort claims. Regarding a state law claim based on an officer's use of excessive force in a similar case, this district court has stated that "officers are entitled to a conditional privilege protecting them from

49

liability for Plaintiff's negligence claim. The 'conditional privilege' immunizes the government officials from liability for tortious acts unless they were motivated by malice." Dawkins v. City & Cnty. of Honolulu, Civ. No. 10-00086 HG-KSC, 2011 WL 1598788, at *19 (D. Hawai'i Apr. 27, 2011) (citing Towse v. State, 647 P.2d 696, 702 (Haw. 1982)). Because "[n]egligence is an unintentional tort not requiring malice[,]" the court found that the defendant was entitled to summary judgment on the negligence claim. Id. (citing Bartolome v. Kashimoto, 2009 WL 1956278, at *2 (D. Haw. 2009); Tagawa v. Maui Pub. Co., 448 P.2d 337, 341 (Haw. 1968)).

    As for assault and battery claims, to overcome police officers' conditional privilege, a plaintiff must prove that the officers acted with malice. Id. (citing Towse, 647 P.2d at 702). The existence of malice is "generally a question for the jury." Id. (citing Runnels v. Okamoto, 525 P.2d 1125 (Haw. 1974)).

    With regard to the malice requirement, this district court has further stated:

        Hawaii law provides that a nonjudicial
        government official has a qualified or
        conditional privilege with respect to his or
        her tortious actions taken in the performance
        of his or her public duty. Towse v. State of
        Hawaii, 647 P.2d 696, 702 (Haw. 1982);
        Runnels v. Okamoto, 525 P.2d 1125, 1128 (Haw.
        1974). This privilege shields all but the
        most guilty nonjudicial officials from
        liability, but not from the imposition of a
        suit itself. Towse, 647 P.2d at 702. The
        privilege is the result of the Hawaii Supreme

Court's balancing of competing interests. It protects the innocent public servant's pocketbook, yet it allows an injured party to be heard. See Medeiros v. Kondo, 522 P.2d 1269, 1272 (Haw. 1974).

For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose. Towse, 647 P.2d at 702–03; Medeiros, 522 P.2d at 1272. When a public official is motivated by malice, and not by an otherwise proper purpose, Hawaii law provides that the cloak of immunity is lost and the official must defend the suit the same as any other defendant. Marshall v. Univ. of Haw., 821 P.2d 937, 946 (Haw. Ct. App. 1991), abrogated on other grounds by Hac v. Univ. of Haw., 73 P.3d 46 (Haw. 2003).

> The existence or absence of malice is generally a question for the jury. Runnels, 525 P.2d at 1129. However, when the existence or absence of malice is demonstrated to the court via uncontroverted affidavits or depositions, the court may rule on the existence or absence of malice as a matter of law. See id.

Edenfield v. Estate of Willets, Civ. No. 05-00418 SOM-BMK, 2006 WL 1041724, at *11–12 (D. Haw. Apr. 14, 2006) (parallel citations omitted).

The Supreme Court of Hawai'i has held that "the phrase 'malicious or improper purpose' should be defined in its ordinary and usual sense." Awakuni v. Awana, 165 P.3d 1027, 1042 (Haw. 2007). In Awakuni, the Supreme Court relied on Black's Law Dictionary, which defines "malicious" as "'[s]ubstantially certain to cause injury' and '[w]ithout just cause or excuse'"; and defines "malice" as "'[t]he intent, without justification or excuse, to commit a wrongful

act[,]' 'reckless disregard of the law or of
a person's legal rights [,]' and '[i]ll will;
wickedness of heart.'" Id. (quoting Black's
Law Dictionary 976-77 (8th ed. 2004)).

Long v. Yomes, Civ. No. 11-00136 ACK-KSC, 2011 WL 4412847, at *6
(D. Hawai'i Sept. 20, 2011) (internal footnote omitted)
(alterations in Long).

In the present case, Plaintiff fails to offer any fact
that could lead a reasonable trier of fact to conclude that
Officer Aoki or Officer Pagan acted with malice.  Viewed in the
light most favorable to Plaintiff, the facts show that Officer
Aoki and Officer Pagan responded to a family dispute and
attempted to keep the peace by utilizing necessary force against
Plaintiff.  Even if Officer Aoki and Officer Pagan acted
inappropriately - which they did not, as the Court discussed
herein - there is no basis to conclude that they possessed
"'[t]he intent, without justification or excuse, to commit a
wrongful act[,]'" or exhibited "'reckless disregard of the law or
of a person's legal rights [,]' and '[i]ll will; wickedness of
heart.'"  See Long, 2011 WL 4412847, at *6 (quoting Awakuni, 165
P.3d at 1042).  That is, there is no indication that the officers
acted with malice so as to strip them of their conditional
privilege.

Moreover, there is absolutely no evidence that Chief
Kubojiri acted with malice.  As for the County, it cannot be held
liable for Officer Aoki's or Officer Pagan's actions because,

"[i]f a government employee is immune from suit, the governmental employer is also immune from suit." See Dawkins, 2011 WL 1598788, at *19 (citing Reed v. City and County of Honolulu, 873 P.2d 98, 107 (Haw. 1994)). Accordingly, the Court GRANTS Defendants summary judgment as to Plaintiff's state law claims.

## V.   Punitive Damages

Finally, the Court turns to the issue of Plaintiff's request for punitive damages. As discussed extensively above, the Court does not find that Defendants violated Plaintiff's constitutional rights, much less that they acted with an evil motive or intent or a blatant disregard of Plaintiff's rights that would necessitate an award of punitive damages.

The Court initially notes that Plaintiff cannot recover punitive damages against the County, because a municipality cannot be liable for punitive damages arising out of a § 1983 claim. Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985) ("punitive damages are not available under § 1983 from a municipality"); Jefferson v. City of Tarrant, Ala., 522 U.S. 75, 75 (1997) ("this Court has ruled that § 1983 plaintiffs may not recover punitive damages against a municipality"). As such, punitive damages can only be recovered against Officer Aoki, Officer Pagan, or Chief Kubojiri.

According to the Hawai'i Supreme Court:

In order to recover punitive damages, "the plaintiff must prove by clear and convincing

> evidence that the defendant has acted
> wantonly or oppressively or with such malice
> as implies a spirit of mischief or criminal
> indifference to civil obligations, or where
> there has been some wilful misconduct or that
> entire want of care which would raise the
> presumption of a conscious indifference to
> consequences."

<u>Mullaney v. Hilton Hotels Corp.</u>, 634 F. Supp. 2d 1130, 1152 (D.

Hawai'i 2009) (quoting <u>Ass'n of Apartment Owners of Newtown</u>

<u>Meadows v. Venture 15, Inc.</u>, 167 P.3d 225, 290 (2007)).

"'[P]unitive damages are not awarded for mere inadvertence,

mistake, or errors of judgment.'"  <u>Id.</u> at 1154 (quoting <u>Venture</u>

<u>15</u>, 167 P.3d at 290).  Rather, the plaintiff must establish that

"the defendant was consciously, i.e., knowingly, indifferent to

the plaintiffs' rights, welfare and safety" and that "the

defendant knew about the peril, but his acts or omissions

demonstrated that he didn't care."  <u>Id.</u> at 1155.

   The Court FINDS that Defendants' actions do not rise to

the level of egregious conduct warranting an award of punitive

damages.  Officer Aoki and Officer Pagan utilized a reasonable

level of force, and there is no factual basis for this Court to

conclude that they acted wantonly, oppressively, with malice, or

with disregard of Plaintiff's rights.  Nor does the record

support a finding that Officer Aoki and Officer Pagan harbored an

"evil motive" toward Plaintiff by improperly assisting one side

in a family dispute.  There is also no indication that Chief

Kubojiri, who was not even involved in the subject incident,

acted wantonly, oppressively, with malice, or with disregard of Plaintiff's rights. Accordingly, summary judgment is GRANTED in favor of Defendants as to punitive damages.

**CONCLUSION**

On the basis of the foregoing, Defendants' Motion for Summary Judgment on All Claims, filed April 5, 2012, is HEREBY GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 27, 2012.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RUSSELL H. DOI V. JOSEPH AOKI, ET AL; CIVIL NO. 10-00639 LEK-RLP; ORDER GRANTING DEFENDANTS JO AOKI, RYAN PAGAN, HARRY S. KUBOJIRI AND COUNTY OF HAWAII'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS**